UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE SCHOOL BOARD OF
SEMINOLE COUNTY, FLORIDA,

    Plaintiff,

v.

H.W.,

    Defendant.
_____/     Case No.: 6:25-cv-00323

D.W., Individually and on Behalf of
H.W., a minor,

    Counter-Plaintiffs,

v.

THE SCHOOL BOARD OF
SEMINOLE COUNTY, FLORIDA,

    Counter-Defendant.
_____/

**COUNTER-DEFENDANT'S OPPOSED MOTION TO DISMISS COUNTERCLAIM**

Counter-Defendant, **The School Board of Seminole County, Florida** ("School Board"), by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Middle District of Florida Local Rule 3.01, respectfully moves to dismiss Plaintiffs' Counterclaim [Doc. 14] and, in support hereof, states as follows:

## Introduction

The case before this Court was initiated after the School Board sought to challenge a Final Order entered in favor of H.W. following a two-day due process hearing held under the Individuals with Disabilities Education Act ("IDEA"). [Doc. 1-1]. Counter-Plaintiffs' Counterclaim bundles issues from the underlying due process matter to assert a claim under the Americans with Disabilities Act (Count I) and further contends that the School Board engaged in discriminatory and retaliatory acts towards Counter-Plaintiffs (Counts II and III). The Counterclaim simply restates the elements of various claims, asserts legal conclusions, and pleads vague facts to support the claims. Stated simply, the Counterclaim falls woefully short of meeting the most basic pleading requirements and is due to be dismissed in its entirety.

## Brief Procedural Background

1. This case follows a two-day due process hearing held under the IDEA before Administrative Law Judge Sara Marken ("ALJ") with the Florida Division of Administrative Hearings ("DOAH"). [Doc. 1-1].

2. On February 26, 2025, the School Board filed a Complaint seeking judicial review and challenging the Final Order pursuant to the IDEA. [Doc. 1].

3. On April 31, 2025, Counter-Plaintiffs filed their Answer and a three-count Counterclaim alleging violations of federal and Florida laws. Specifically, the Counterclaim asserts the following claims [Doc. 14]:

    **Count I**    Violation of Title II of the American[sic] Disabilities Act

  **Count II**  Retaliation

  **Count III**  Florida Educational Equity Act

  4.  As set forth in the Memorandum of Law below, Counter-Plaintiffs' claims should be dismissed for the following reasons:

    a.  Counter-Plaintiffs Fail to State a Claim for Violations of the ADA (Count I);

    b.  D.W. Lacks Standing under the ADA (Count I);

    c.  Counter-Plaintiffs Fail to State a Claim for Retaliation under the ADA (Count II); and,

    d.  Counter-Plaintiffs Fail to State a Claim under the FEEA (Count III).

## LOCAL RULE 3.01(g) CERTIFICATION

  5.  Pursuant to M.D. Fla. Loc. R. 3.01(g), the undersigned certifies that he conferred with Counsel for Counter-Plaintiffs on May 27, 2025, via-telephone regarding the School Board's position that the claims set forth in the Counterclaim should be dismissed. Counsel for Counter-Plaintiffs opposes the dismissal of the Counterclaim.

  **WHEREFORE**, the School Board respectfully requests the entry of an Order dismissing the Counterclaim together with such other and further relief as this Court deems just and proper.

## MEMORANDUM OF LAW

**I.     Applicable Standard of Review for Motions to Dismiss**

A court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While courts typically must view the complaint in the light most favorable to the plaintiff when ruling on a motion to dismiss (see St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am., 795 F.2d 948, 953 (11th Cir. 1986)), this tenet does not apply to legal conclusions. Id. at 678-679.

Stating the general elements of a cause of action without any supporting facts is insufficient to state a cause of action. Brown v. Florida Gulf Coast Univ. Bd. of Trustees, 2018 WL 5971661, at *3 (M.D. Fla. Nov. 14, 2018) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (citing Iqbal, 556 U.S. at 678). A plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. 544, 545 (2007). Mere naked assertions are also inadequate. Iqbal, 556 U.S. at 678-679.

While the well-pleaded facts must be accepted as true and construed in favor of the plaintiff, "the court should not assume that the plaintiff can prove facts that were not alleged." UMG Recordings, Inc. v. Bright House Networks, LLC, No. 8:19-cv-710-MSS-TGW, 2020 WL 3957675, at *2 (M.D. Fla. July 8, 2020) (quoting Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007)). And, "dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief." Id. (citing Neitzke v. Williams, 490 U.S. 319, 326 (1989)).

## II.     Bases for Dismissal and Supporting Authority

### A.     Counter-Plaintiffs Fail to State a Claim for Violations of the ADA (Count I)

#### 1. Counter-Plaintiffs have Not Met Minimal Pleading Requirements

A claim under the ADA requires that a plaintiff allege (1) he is disabled, (2) he is a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability. Meisenhelder v. Fla. Coastal Sch. of Law, Inc., 3:09-CV-0074-HES-TEM, 2010 WL 2028089, at *3 (M.D. Fla. Feb. 19, 2010), aff'd, 395 Fed. App'x. 669 (11th Cir. 2010). Moreover, claims under the ADA in the education context require something more than a violation of the IDEA. See J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ., 877 F.3d 979, 985 (11th Cir. 2017). Indeed, "courts have applied a unique standard to § 504 special education failure-to-accommodate claims…[t]hese courts have consistently held that it is harder for a plaintiff to prevail on a failure-to-accommodate claim under § 504 than a failure-to-accommodate claim

under IDEA, assuming that the plaintiff is covered under both § 504 and IDEA."[1] H. v. Montgomery Cnty. Bd. of Educ., 784 F. Supp. 2d 1247, 1262 (M.D. Ala. 2011). "A plaintiff must also demonstrate some bad faith or gross misjudgment by the school or that he was discriminated against solely because of his disability." W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist., 407 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2005).

Count I alleges that Counter-Plaintiffs requested that a private nurse be permitted to accompany H.W. to school, "the district stated that there is a policy that private nurses are 'not allowed on school campuses,'" the policy is unwritten and arbitrary[sic] applied, H.W. was denied a reasonable accommodation of this unwritten policy, and the denial was "not reasonable and retaliatory." [Doc. 14, ¶¶17-24]. Counter-Plaintiffs also assert that they were advised that "having a private nurse would 'disrupt the classroom'" and that "a private nurse was not needed because the proper level of support was being provided to the student…" Because H.W. was denied a request to have a private nurse on campus "without just cause," Counter-Plaintiffs contend the School Board violated the ADA. [Doc. 42].[2]

Counter-Plaintiffs' ADA claim mirrors the IDEA issue litigated during the due process case. At issue in the due process case was "[w]hether the School Board failed to provide a free and appropriate education (FAPE) by denying the student one-on-one medical services." [Doc. 1-1 at p.1]. While Counter-Plaintiffs will likely argue that

---

[1] Claims under the ADA and Section 504 require the establishment of the same elements. J.S., 877 F.3d at 985 (11th Cir. 2017).
[2] The Counterclaim also technically fails to allege that H.W. is a qualified individual under the ADA.

6

their request for a privately paid, 1:1 nurse is separate and distinct from the issue addressed in the due process case, the fact remains that the only issue before DOAH was whether the School Board denied H.W. FAPE by refusing to provide 1:1 nursing services. [Doc. 1-1 at pp. 1, 5, 7, 9]. As the Final Order notes, "[t]he treating physician included in his orders that the student requires a one-on-one nurse to attend school safely. The School Board disregarded the order because it believed the student's current placement met his medical needs, though it implemented all other portions of the orders and failed to seek clarification or additional information as to why the student required the one-on-one assistance." [Doc. 1-1, ¶21].

Fatal to Count I is the absence of any allegations establishing that the School Board's denial of Counter-Plaintiffs' accommodation request was "bad faith or gross misjudgment" or that such action was taken solely because of H.W.'s disability. Instead, the Counterclaim merely lodges conclusory allegations that the denial was "arbitrar[ily] applied," "not reasonable," "retaliatory," and "pretext," [Doc. 14, ¶¶19, 24, 27].[3] There are no allegations that the School Board's conduct was intentional or constitutes bad faith, gross misjudgment, or deliberate indifference. Because Counter-Plaintiffs' ADA claim is nothing more than a denial of FAPE claim, it is due to be dismissed. Parnes v. Orange Cnty. Sch. Bd., 751 F. Supp. 3d 1283, 1291 (M.D. Fla. 2024)("the Parneses must show more than the denial of a FAPE for the violation to constitute discrimination").

---

[3] These vague and conclusory allegations are also "wholly insufficient to state a claim" against the School Board. Barr v. Gee, 437 Fed. Appx. 865, 878 (11th Cir. 2011) (internal citations omitted).

7

## 2. A Parent Does Not Have Standing to Bring Suit in their Individual Capacity Under the ADA (Count I)

In Count I, D.W., as natural parent of H.W., seeks to recover under the ADA. [Doc. 14, ¶¶9, 36-42]. However, D.W. failed to allege he is disabled or otherwise entitled to protection under ADA. It is axiomatic that to bring a claim under Title II of the ADA, one must be a qualified individual with a disability. Palermo v. Grunau Co., Inc., 220 F. Supp. 3d 1300, 1306 (M.D. Fla. 2016), as amended (Nov. 7, 2016) (citing Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255-56 (11th Cir. 2007)); Silberman v. Miami Dade Transit, 927 F.3d 1123, 1134 (11th Cir. 2019). D.W. does not assert that he is individually qualified for protection under the ADA or that he was subjected to unlawful discrimination because of any disability. As such, dismissal of D.W.'s individual capacity claim under the ADA is warranted.

**B.     Counter-Plaintiffs Fail to State a Claim for Retaliation (Count II)**

Count II alleges that the School Board engaged in retaliation prohibited under the ADA. [Doc. 14, ¶45]. "To establish a claim for retaliation under the ADA, Counter-Plaintiffs must show that (1) they were engaged in a protected activity under the ADA, (2) the Board knew of the protected activity, (3) the Board took adverse action against Counter-Plaintiffs, and (4) there was a causal connection between the protected activity and the adverse action." Parnes, 751 F. Supp. 3d at 1292. For purposes of the allegations in the Counterclaim, Counter-Plaintiffs cannot satisfy the third and fourth elements.

To support their claim of retaliation, Counter-Plaintiffs assert "that the Counter-Defendant's denial of a private nurse and other actions after the ALJ ruled in the family's favor are retaliation for the parents' continued strong efforts to advocate for their child." (emphasis added). [Doc. 14, ¶46]. More specifically, Counter-Plaintiffs assert that School Board engaged in the following retaliatory acts [Doc. 14, ¶¶47-49, 52-53]:

> 47. The decision to deny the request for a one-to-one nurse and implement new rules just for this family were intentional and done in a strategic effort to push this student and his family from the public school system in retaliation for strong advocacy and success in the due process case.
>
> 48. The Counter-defendant's arbitrarily rule changing and selective implementation of certain rules at certain times shows a clear pattern and practice and the animus intent of the Counter-defendant in deciding when to use these rules to make it is difficult as possible to send this child to school safely.
>
> 49. The persistent, unnecessary and overly harsh efforts to punish this family establish a clear effort to retaliate pursuant to 34 C.F.R. § 100.7(c).
>
> 52. In response to this advocacy H.W. and his parents have experienced roadblocks with the unreasonable rules changes and implementation of unwritten policies that are ever changing and unknowable and were all done in a cumulative and intentional effort to retaliate for his parents' strong advocacy efforts.
>
> 53. The counter-defendant has been deliberately indifferent to the needs of this student and the impact this retaliation has had on the family.

First, as to the allegations in ¶47 of the Counterclaim, it is entirely unclear whether the School Board's denial of a 1:1 nurse was retaliation for Counter-Plaintiffs' prior "strong advocacy." Assuming so, the Counterclaim fails to plead sufficient facts to demonstrate that Counter-Plaintiffs engaged in a protected activity under the ADA and that the Board knew of the protected activity. Specifically, the Counterclaim

9

contains no information as to when Counter-Plaintiffs' "strong advocacy" started, what Counter-Plaintiffs mean by "strong advocacy" (*i.e.* the details of the alleged protected activity), who within the School Board was aware of this activity, when Counter-Plaintiffs subsequently requested a 1:1 nurse, and when the request was denied by the School Board. To the extent Counter-Plaintiffs allege the denial of a 1:1 nurse occurred after the entry of the Final Order, the Counterclaim concedes that "it is unclear if a one-to-one nurse is being provided." [Doc. 14, ¶29]. Counter-Plaintiffs cannot plead a sufficient claim if they are "unclear" whether the alleged retaliatory act even occurred.

Second, with respect to the School Board's alleged decision to "implement new rules just for this family" that "were intentional and done in a strategic effort," the Counterclaim fails to identify a single "new rule" allegedly adopted by the School Board, any facts to support why this unidentified new rule is evidence of a strategic effort on the part of unidentified School Board personnel to "push this student and his family from the public school system," how the School Board engaged in "selective implementation" of "certain rules at certain times," or how Counter-Plaintiffs were even impacted. [Doc. 14, ¶¶47-48]. These are nothing more than conclusory statements without any notice to the School Board of the alleged adverse actions it supposedly took against Counter-Plaintiffs and how there is a causal connection between the protected activity and the adverse action.

Third, Counter-Plaintiffs' allegation that the School Board's "persistent, unnecessary and overly harsh efforts to punish this family establish a clear effort to

10

retaliate pursuant to 34 C.F.R. §100.7 (c)" is also nothing more than the assertion of conclusions and labels without any notice to the School Board of the alleged adverse actions it supposedly took against Counter-Plaintiffs.[4]

Fourth, similar to the alleged "new rule" adopted and implement by the School Board [Doc. 14, ¶¶47-48], which Counter-Plaintiffs have not identified, the claim that Counter-Plaintiffs "have experienced road blocks with the unreasonable rules changes and implementation of unwritten policies that are ever changing and unknowable and were all done in a cumulative and intentional effort to retaliate for his parents' strong advocacy efforts" is similarly conclusory and lacking any detail to meet minimal pleading requirements. [Doc. 14, ¶52]. The Counterclaim contains no information as to when Counter-Plaintiffs' "strong advocacy" started, what Counter-Plaintiffs mean by "strong advocacy" (*i.e.* the details of the alleged protected activity), who within the School Board was aware of this activity, how experiencing "road blocks" or "unreasonable rule changes and implementation of unwritten policies" is an adverse action, and how there is a causal connection between the protected activity and the adverse action.

Fifth and finally, Counter-Plaintiffs claim that the School Board "has been deliberately indifferent to the needs of this student and the impact this retaliation has had on the family" fails to meet basic pleading requirements. [Doc. 14, ¶53]. Counter-

---

[4] Through conferral on this Motion, Counter-Plaintiffs' legal counsel acknowledged that Counter-Plaintiffs inadvertently cited to 34 C.F.R. §100.7(c) and would remove "pursuant to 34 C.F.R. §100.7(c)" from the sentence in ¶49 of the Counterclaim.

Plaintiffs have not identified who was deliberately indifferent toward H.W., how they were deliberately indifferent (*i.e.* what specific actions were taken), whether any individual with notice could have remedied the issue but did not, when the School Board had notice of the deliberate indifference, and how the School Board's response was deliberately indifferent. In fact, Counter-Plaintiffs also failed to identify the "impact" of these unknown retaliatory acts (*i.e.* what happened) and what individuals are included within the vague description of "the family."

### C. Counter-Plaintiffs Fail to State a Claim Under the FEEA (Count III)

"The purpose of the 'Florida Educational Equity Act' is to provide by law for a state system of schools, courses, classes, and educational institutions and services adequate to allow, for all Florida's students, the opportunity to obtain a high quality education." Irwin v. Miami-Dade Cnty. Pub. Sch., No. 06-23029CIV, 2009 WL 497652, at *7 (S.D. Fla. Feb. 25, 2009), aff'd, 398 Fed. Appx. 503 (11th Cir. 2010). To recover under the FEEA, a plaintiff must show "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf [had] actual notice of and [was] deliberately indifferent" to discriminatory conduct. Doe v. Sch. Bd. of Miami-Dade Cnty., Fla., 521 F. Supp. 3d 1242, 1249 (S.D. Fla. 2019) (finding the FEEA is patterned after Title IX). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference." Dallas Indep. Sch. Dist., 153 F.3d at 219. Indeed, "[a] plaintiff must establish at least 'deliberate indifference' as a basis for recovery under

the Florida Educational Equity Act. R.P. v. Leon Cnty. Sch. Bd., No. 4:03CV387-SPM, 2005 WL 8164796, at *9 (N.D. Fla. Sept. 30, 2005).

In Count III, Counter-Plaintiffs contend, "[t]he discriminatory and retaliatory acts and omissions by the Counter-Defendant resulted in the exclusion from participation in, benefits of the public school program." [Doc. 14, ¶58]. Count III contains no specific facts within the count to support what conduct was discriminatory or retaliatory. [Doc. 14, ¶55]. However, as set forth hereinabove, Counts I and II fall woefully short of asserting claims for discrimination or retaliation under the ADA. Count III fails for the same reasons.[5]

As additional grounds supporting dismissal, Count III contains no allegations that an appropriate school official was aware of discriminatory conduct on the basis of H.W.'s disability[6] and, in response thereto, acted with deliberate indifference. Stated differently, Counter-Plaintiffs have not stated sufficient facts that the School Board was on notice of anything to be deliberately indifferent towards. Hawkins v. Sarasota Cnty. Sch. Bd., 322 F.3d 1279, 1287 (11th Cir. 2003) ("The deliberate indifference issue is intertwined with the question of notice since whether the Board's actions were clearly unreasonable must be measured by what was known."). Based on the foregoing, Count III fails to state a claim under the FEEA.

Dated this 27th day of May 2025.

---

[5] Counter-Plaintiffs do not contend that the alleged "failure to supervise H.W." on the school bus on April 22, 2024, was because of H.W.'s disability. [Doc. 14, ¶33].
[6] Similar to Count I, Counter-Plaintiffs assert Count III on behalf of both H.W. and D.W. However, the Counterclaim asserts no facts to support a claim by D.W. under the FEEA.

Respectfully submitted,

*/s/ Terry J. Harmon*
**TERRY J. HARMON**
Florida Bar Number: 0029001
tharmon@sniffenlaw.com
**DESIGNATED LEAD COUNSEL**
*/s/ Amy J. Pitsch*
**AMY J. PITSCH**
Florida Bar Number: 0338280
apitsch@sniffenlaw.com
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for the School Board*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 27th day of May 2025, a true and correct copy of the foregoing was electronically filed in the US District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Terry J. Harmon*
**TERRY J. HARMON**